174 N.J. Super. 597 (1980)
LIGRAN, INC., A CORPORATION OF THE STATE OF NEW JERSEY AND MARTIN ANGER, PLAINTIFFS-RESPONDENTS, CROSS-APPELLANT,
v.
MEDLAWTEL, INC., A NEW JERSEY CORPORATION ET AL., DEFENDANTS-APPELLANTS, CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 1980.
Decided June 20, 1980.
*598 Before Judges LORA, ANTELL and PRESSLER.
Michael D. Mopsick, argued the cause for appellant Elizabeth Butkus (Jeffer, Walter, Tierney, De Korte, Hopkinson & Vogel, attorneys).
Robert B. Cherry argued the cause for respondents (Barbara A. Nagle, on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
The primary issue raised by this appeal, not heretofore considered in a reported decision of an appellate court of this jurisdiction, is the question of when the cause of action accrues against the guarantor of payment of a promissory demand note, whether the guarantor is the maker himself or a third person. We hold that the cause of action in either case accrues at the same time it accrues against the maker, namely, the date on which the instrument was made, or if no date is thereon stated, *599 on the date of its issue. N.J.S.A. 12A:3-122(1)(b). By this holding we overrule the contrary conclusion reached in Central Jersey Bank & Trust v. Lady Van Ind., 154 N.J. Super. 459 (Law Div. 1977).
The facts posing the issue here are essentially undisputed. Plaintiff corporation is the owner of two motels which it leased to defendant corporation for a five-year term commencing May 1, 1969, with an option to renew. Both are close corporations. Plaintiff Martin Anger is a principal of the landlord corporation and defendant Elizabeth Butkus is a principal of the tenant corporation. In accordance with the terms of the lease and in partial satisfaction of the tenant's security deposit obligations, Butkus gave Anger a promissory demand note dated April 28, 1969, in the amount of $12,500, payable to him on his order. She signed the note on its face as sole maker and on its reverse side as sole guarantor, beneath a printed legend reading as follows:
For value received the undersigned and each of them hereby forever waives presentment, demand, protest, notice of protest and notice of dishonor of the within note and the undersigned and each of them guarantees the payment of said note with interest at maturity or any time thereafter and consents without notice to any and all extensions of time or terms of payment made by holder of said note.
In June of 1975 plaintiffs recovered the premises and commenced this action against defendants in September 1975 by way of a multi-count complaint charging defendants with conversion, waste, violation of an escrow agreement, fraud and various other breaches of the lease. The seventh count of the complaint sought recovery against Butkus individually on the basis of her unpaid note. It is plaintiffs' allegation that demand for payment was not made by them until sometime in March 1975. Trial of the cause resulted in a judgment adjudicating the corporate defendant liable in the amount of some $11,000, representing real estate taxes it had failed to pay in accordance with its lease obligation and adjudicating defendant Butkus liable on the note in its full amount. All other counts were dismissed. Butkus appeals from that portion of the judgment adverse to her and plaintiffs cross-appeal from the dismissal of their remaining counts. No appeal has been taken from the tax liability adjudication.
*600 With respect to the appeal of Butkus, it is first clear that the general six-year statute of limitations prescribed by N.J.S.A. 2A:14-1 applies. The question, as we have noted, is when the statute started to run. Accrual of a cause of action on commercial paper is governed by N.J.S.A. 12A:3-122. N.J.S.A. 12A:3-122(1)(b) provides that the cause of action against the maker of a demand instrument accrues upon its date or, if no date is stated, on the date of issue. Thus, if this provision of the statute is applicable, Butkus' limitations defense to a complaint filed more than six years following the date of the note should have succeeded and the action on the note held time-barred. N.J.S.A. 12A:3-122(3), however, provides that "A cause of action against ... an indorser of any instrument accrues upon demand following dishonor of the instrument. Notice of dishonor is a demand." Thus, if the indorser provision of the statute applies, the suit was timely since demand was not made until several moths before its commencement. The trial judge, relying on Central Jersey Bank & Trust v. Lady Van Ind., supra, held that although the sole maker and endorser here were one and the same person, the indorser-accrual date applied rather than the maker-accrual date. We disagree. We interpret the pertinent provisions of Article 3 of the Uniform Commercial Code, N.J.S.A. 12A:3-101 et seq., as providing, first, that the maker-accrual date applies whenever the sole maker is also the guarantor of the instrument, and second, that the maker-accrual date applies in respect of a third-person guarantor of payment.
The first of these conclusions is, in our view, required by N.J.S.A. 12A:3-416(4), which expressly provides that "No words of guaranty added to the signature of a sole maker or acceptor affect his liability on the instrument." Clearly, the substantive content of the concept of liability must include the accrual date of the cause of action. Any deferral of the single maker-guarantor beyond that provided for by N.J.S.A. 12A:3-122(1) would also necessarily result in an enlargement of maker's liability. Such deferral, therefore, in contradiction to the express terms of the Code, would affect the maker's liability. We note, moreover, that the notion of a single person acting both as primary *601 obligor and as guarantor of the primary obligor is not only a paradoxical anomaly but also a conceptual redundancy, particularly in view of the general legal concept that the obligation of the guarantor is ordinarily at most coextensive with and not greater than the obligation of the primary obligor. See, e.g., General Electric Credit Corp. v. Castiglione, 142 N.J. Super. 90, 100-101 (Law Div. 1976). Accordingly, it is generally assumed that the guarantor is a person different from the primary obligor. See, e.g., Roxbury State Bank v. The Clarendon, 129 N.J. Super. 358, 376-377 (App.Div. 1974), certif. den. 66 N.J. 316 (1974). And see Indianapolis Morris Plan Corp. v. Sparks, 132 Ind. App. 145, 172 N.E.2d 899 (Ct.App. 1961); Trego WaKeeney State Bank v. Maier, 214 Kan. 169, 519 P.2d 743 (Sup.Ct. 1974). Thus, we regard N.J.S.A. 12A:3-416(4) as not only of clear and unambiguous import but also as eminently sensible in its perception that the guaranty by the maker of his own obligation is essentially surplusage.
The second of our conclusions, namely, that the accrual date is the same for a third-person guarantor of payment as it is for the maker, is also mandated by the Code and is further supportive, on an a fortiori basis, of our holding that the maker's accrual date applies in respect of the maker's own guaranty. We are compelled to this conclusion by a comparison of N.J.S.A. 12A:3-414, which defines and delineates the contract of the ordinary indorser, and N.J.S.A. 12A:3-416, which defines and delineates the contract of the guarantor, who is a special indorser. Thus, N.J.S.A. 12A:3-414(1), subject to the caveat that "unless the indorsement otherwise specifies," defines the essence of the indorser's contract as his engagement "that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor." Since the liability of the indorser is thereby dependent upon there having been a dishonor, it is perfectly plain that the cause of action against him cannot commence to run, as provided by N.J.S.A. 12A:3-122(3), until there has actually been a dishonor and notice to him thereof. The essence, however, of the contract of the guarantor of payment is that it is not in any way dependent upon a prior *602 dishonor since N.J.S.A. 12A:3-416(1) defines the obligation as an engagement "that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party." The New Jersey Study Comment further explains this provision as follows:
Section 3-416 provides a new statutory definition of the contract of the guarantor. The section declares the common commercial understanding as to the meaning and effect of words of guaranty added to a signature. One who by indorsement guarantees payment waives the conditions precedent that usually attach to the indorsement contract and becomes for all practical purposes a co-maker.
This comment paraphrases the Uniform Commercial Code Comment, which further points out that in the case of an indorser who is a guarantor of payment "the liability of the indorser becomes indistinguishable from that of a co-maker."
For the reasons aforesaid, we construe identity of scope of liability as encompassing identity of accrual date. This conclusion has been reached as well by other jurisdictions which have considered the problem and have uniformly held that the maker's accrual date applies to a third-party guarantor of payment. See e.g., Cantor v. Newton, 4 Mass. App. 686, 358 N.E.2d 247 (App.Ct. 1976); American Trading Co., Inc. v. Fish, 42 N.Y.2d 20, 364 N.E.2d 1309, 396 N.Y.S.2d 617 (Ct.App. 1977); Rice v. Travelers Express Co., 407 S.W.2d 534 (Tex.Civ.App. 1966).
Plaintiffs make the further argument that irrespective of the Code, it would be inequitable to relieve Butkus from liability on the note since it was given as security for a lease which, if the option to renew had been exercised, would have had a ten-year life, four years longer than the statute of limitations in any event. We regard this argument as irrelevant to the maker-guarantor question. Had the note not been guaranteed by the maker, there is no question that N.J.S.A. 12A:3-122(1)(b) would have applied. In any event, the landlord was not without recourse. It could have insisted on replacement security at the time any renewal option were exercised, and it was, moreover, free to insist on obtaining from the tenant the cash security provided for by the lease. Its initial election to accept Butkus' note must be deemed to have been made subject to the ordinary legal predicates surrounding the instrument.
*603 As to the cross-appeal, we are satisfied that the record as a whole supports the determinations reached. R. 2:11-3(e)(1)(E).
The judgment is reversed insofar as it adjudicates liability of Elizabeth Butkus on the promissory note in question. In all other respects the judgment is affirmed.