MRS. FRANCES BURNAMAN V. MRS. JAN HIGDON
PEABODY HEATON ET AL.

No. A-2872. Decided May 30, 1951.
Rehearing overruled June 27, 1951.
(240 S. W., 2d Series, 288.)

334

*Kelley, Looney, McLean & Littleton,* of Edinburg, and *George W. Eddy,* of Houston, for petitioner.

The undisputed facts show that plaintiff, petitioner here, unqualifiedly repudiated her attorney's agreement to accept the $10,000.00 compromise settlement, and that such repudiation was known to her attorneys and the trial court before she paid any money to her attorneys or into the registry of the court, and it was error on the part of the trial court to enter judgment on the alleged compromise settlement, and it was error on the part of the Court of Civil Appeals not to consider this point of plaintiff-appellant in that court. Saner-Whiteman Lbr. Co. v. Texas & N. O. Ry. Co., 288 S. W. 1063; Ford v. Carpenter, 147 Texas 447, 216 S. W. 2d 558; Miller v. Dallas Consolidated Electric St. Ry. Co., 104 Texas 57, 133 S.W. 866.

*Gordon Gibson,* of Laredo, and *John Q. Adams,* of Harlingen, for respondents.

Where an agreement settlement was made in good faith between the parties to the suit, through their respective attorneys of record, acting in the scope of their authority, and the terms of such agreement were announced in open court and entered on the court docket and in its minutes, before either the

court or the attorneys had any knowledge of plaintiff's repudiation of same, such agreement is valid and enforceable and judgment is authorized thereby. Gilson v. State 142, Texas Crim. Rep. 422, 154 S.W. 2d 839; Bradford v. Powell, 163 S.W. 684; Id. 139 Texas 638, 166 S.W. 2d 346; Wyss v. Bookman, 235 S.W. 567.

MR. JUSTICE SMITH delivered the opinion of the Court.

This suit was instituted by Mrs. Frances Burnaman against Mrs. Jan Higdon Peabody Heaton and her husband, W. P. Heaton, for damages for personal injuries suffered by plaintiff as the result of a collision between an automobile driven by Mrs. Burnaman and an automobile driven by Mrs. Heaton.

A trial court judgment in favor of respondents was affirmed by the Court of Civil Appeals, 231 S.W. 2d 1006.

For convenience, the parties shall hereafter be referred to as plaintiff and defendants. The original attorneys for the respective parties shall be referred to as attorneys for plaintiff and attorneys for defendants.

The collision and resulting injuries to plaintiff occurred on August 17, 1948, and on August 26, 1948, plaintiff, by written contract, employed her attorneys to file and prosecute to its final disposition a suit granting the defendants to recover damages. The written contract of employment contained the following provision: "any compromise must be approved by me."

The suit was called for trial on Monday, March 21, 1949, whereupon the attorneys for plaintiff and defendants appeared and announced to the court that the parties had agreed to settle the suit, the plaintiff to receive $10,000, and the defendants to pay all costs. The trial court, while in the clerk's office that morning, or early afternoon, entered on the docket a notation reflecting such settlement. The attorney for the plaintiff was present at the time the entry was made and requested the court to wait until he could get a confirmation of the notation from the attorney for the defendants. Within a few minutes the attorney for plaintiff returned and stated that the attorney for defendants desired to have that portion of the notation erased which stated the amount of the settlement. The court complied with the request.

On March 22, 1949, one of the clerks informed the court that

the plaintiff was "trying to back out on the settlement." The trial judge testified to these facts at a hearing later held on June 13, 1949, and further testified that the Clerk had received this information from one of the attorneys for defendant.

On March 23, 1949, the attorneys for the parties again appeared and in open court announced "that the plaintiff have judgment, ten thousand dollars and costs against the defendant." The court accordingly made the following notation on the docket: "Plaintiff and defendant announce in open court that plaintiff do have and recover of and from the defendant the sum of ten thousand dollars and costs as per decree to be entered."

On March 31, 1949, the trial court received a letter from the plaintiff advising the court that she did not authorize the settlement. The court, on his own motion, set the matter for hearing on April 4, 1949. The hearing was later set for June 13, 1949, at the request of the plaintiff. The plaintiff was cited to show cause why judgment, as announced, should not be entered. The defendant filed a motion to enter judgment.

The hearing on the defendant's motion to enter judgment was had on the last mentioned date, but final judgment was not entered until December 12, 1949. The plaintiff employed her present attorneys to represent her at the hearing. Plaintiff at all times was in the Hermann Hospital in Houston and was not present in court on any of the dates mentioned herein. She testified by deposition on June 13, 1949.

On March 20, 1949, the attorney for plaintiff talked to her by long distance telephone, and he testified that, after a lengthy conversation costing $10.20, she agreed to settle for $10,000.00.

On March 21, 1949, he sent a telegram to the plaintiff's niece stating, in effect, that settlement had been made in accordance with her authorization. This telegram was delivered to plaintiff and on March 23, 1949, at 11:00 P. M. she sent a telegram to her attorney stating that she was amazed and that she had not authorized him to settle the case.

■ Under the circumstances, we are of the opinion that the trial court should not have accepted the announced settlement on March 23, 1949. The docket entry made upon that date is the only one on which defendants can rely. The announcement of settlement and docket entry were made after the court had received information that the plaintiff was dissatisfied. While

there is undoubtedly a dispute as to whether she authorized her attorney to make the settlement, the record reveals that she was opposed to the settlement and is still insisting upon her right to be heard upon the merits of her claim.

We believe that the attorney for plaintiff was acting in good faith when he insisted that plaintiff make the settlement. His evidence introduced at the hearing shows that it was with great reluctance that she gave her authority. This did not relieve the court of the duty to make inquiry as to all the facts and circumstances surrounding the authority of the attorneys to make the compromise on the morning of March 23, 1949, before the docket entry was made and later recorded in the minutes. This is especially true when the parties are not before the court in person and the judge has notice that the settlement might not be satisfactory to one of the parties.

■ It is the contention of the defendants that the trial court was authorized to enter the judgment on December 12, 1949, based on the announcement made on March 23, 1949, in open court by the attorneys for plaintiff and defendant, of the settlement agreement, and the further fact that the agreement was noted on the docket and such notation was later entered in the Minutes of said court. They further contend that by virtue of this procedure the settlement agreement became valid and enforceable and complied with Rule 11 of the Texas Rules of Civil Procedure, which rule reads as follows: "No agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as a part of the record, or unless it be made in open court and entered of record."

The plaintiff is here seeking relief so that she may have the right to try her suit before a jury. As barring that right she is faced not only with an agreement made in compliance with Rule 11, T. R. C. P.—which she contends she did not authorize her attorney to make—but is faced as well with a judgment of the court rendered on March 23rd which, if allowed to stand, is an absolute bar to her right to proceed with her suit. The fact that the agreement was made in open court and was entered of record would not be an absolute bar to her right to a trial of her suit. The judgment would. If in the face of the agreement she sought to proceed and the defendants set up the agreement of settlement as a bar to her right to do so, she could then assert that the agreement was made by her attorney without her consent or authority and she would be entitled to have a jury trial

of that issue along with the issues of liability and damages. Under such circumstances her situation would be no different—no better and no worse—than if her attorney had signed a written agreement of settlement in compliance with the alternative provisions of Rule 11. In our opinion, Rule 11 has little, if any, controlling effect in this case even though it be assumed that the Rule was complied with. The important and controlling question to be determined is whether the judgment rendered by the court on March 23rd should be allowed to stand.

■ The judgment was rendered on the agreement of the attorneys and was therefore a consent judgment. 25 Tex. Jur., p. 385, et seq.; 49 C. J. S., p. 308, et seq. A valid consent judgment cannot be rendered by a court when consent of one of the parties thereto is wanting. It is not sufficient to support the judgment that a party's consent thereto may at one time have been given; consent must exist at the very moment the court undertakes to make the agreement the judgment of the court. This fundamental principle was correctly announced and followed by the Supreme Court of North Carolina in the case of Rodriquez v. Rodriquez, 224 N. C. 275, 29 S. E. 2d 901. In that case it appeared that the defendant had consented to a particular judgment in a divorce proceeding and that both she and her attorney had signed and approved the proposed judgment, complete in all detail. On the day before the judge signed the same the attorney for defendant withdrew from the case and a new attorney of her selection withdrew consent. On appeal from the judgment, the court said:

"In many respects the judgment by consent is treated as a contract between the parties. (Cases cited). The power to render such judgment depends upon the subsistence of the consent at the time the agreement receives the sanction of the court, or is rendered and promulgated as a judgment.

"Contemporaneously with signing the judgment, Judge Armstrong found facts, amongst which it is stated that the parties agreed that the judgment might be signed * * * on December 8, 1943. It is clear, however, that this agreement was prospective and that at the time it was made no judgment had been rendered, nor was any judgment rendered until the day of signature—after the consent of the defendant had been withdrawn and after the court had notice of that fact. Without such consent the judgment is void."

This holding by the North Carolina court was reaffirmed by it in the cases of Williamson v. Williamson, et al, 224 N. C.

474, 31 S. E. 2d 367 and King v. King, 225 N. C. 639, 35 S. E. 2d 893. To the same effect see Jacobs v. Steinbrink, 242 App. Div. 197, 273 N. Y. S. 498.

■ When a trial court has knowledge that one of the parties to a suit does not consent to a judgment, agreed to by his attorney, the trial court should refuse to give the agreement the sanction of the court so as to make it the judgment of the court. Any judgment rendered on the agreement under such circumstances will be set aside. McMillan v. McMillan, 72 S.W. 2d 611, no writ history; Preston v. Hill, 50 Cal. 43. The same reasons which impel the setting aside of a consent judgment rendered by the court with knowledge that a party does not consent thereto will, in the interest of justice, also impel the setting aside of a consent judgment rendered when the court is in possession of information which is reasonably calculated to prompt the court to make further inquiry into the party's consent thereto, which inquiry, if reasonably pursued, would disclose the want of consent.

■ In the judgment entered on December 12th the court specifically found that the judgment of the court was rendered on March 23rd and the docket entry was made "without either the court nor any of the attorneys for either the plaintiff or defendants having any knowledge that the plaintiff did not consider the compromise agreement acceptable." Whether this part of the draft of judgment be treated as a recital which imports verity and cannot be impeached by an absence of evidence in the record to support it or as a finding of fact that must find support in the evidence, it does not negative the fact that the court was in possession of information that plaintiff, if ever having agreed thereto, did not consider the compromise agreement acceptable at the time judgment was rendered on March 23rd. It could not have negatived that fact without being in conflict with the judge's own testimony.

■ At the hearing in this proceeding the judge placed in the record his statement of the events leading up to the rendition of the judgment. In this connection he testified as follows: "On Tuesday, March 22nd, in the afternoon, one of the deputy clerks saw me and asked who scratched the docket entry (of the 21st) and I said I had done it, and the matter came up" that one of defendants' attorneys "had asked the deputy clerk, stating something about Mrs. Burnaman was trying to back out on the settlement." This statement of the judge indicating that the information that plaintiff "was trying to back out on the settlement"

had come from one of defendants' attorneys is confirmed by the testimony of one of such attorneys who testified in this proceeding as follows: "Now when I learned that Mrs. Sheldon—I mean Mrs. Burnaman did not want to abide by the settlement agreement that had been made, I am not quite positive in my own mind whether it was Wednesday morning (23rd) or Tuesday afternoon (22nd)---." We think the information in the possession of the court was clearly sufficient and of such a nature as to put the court on notice that plaintiff's consent to the judgment rendered on March 23rd might be wanting and to require the court to make further inquiry before rendering the judgment. Reasonable inquiry would have led unerringly to plaintiff's dissatisfaction with the agreed settlement. For the failure to make that inquiry the judgments of the Court of Civil Appeals and the trial court are reversed.

Since the judgment of the trial court is reversed, we cannot pass on the effect of the agreement made by the attorneys or the notation of that agreement on the docket. We can only say that the announcement of the agreement in open court and its notation on the docket cannot give it the force of a judgment. It follows that the reversal of the judgment should be without prejudice to the right of defendants to plead the agreement in bar of plaintiff's suit and without prejudice also to plaintiff's right to avoid the agreement by pleading that her attorney was without authority to make it. These are issues to be settled by the jury or the court in a trial of the case.

For the reasons stated  the judgments below are reversed and the cause is remanded to the trial court to be tried on its merits.

Opinion delivered May 30, 1951.

Justice Garwood dissenting without opinion.

Rehearing overruled June 27, 1951.